**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**UNITED STATES OF AMERICA,**

**v.**                                                          **1:07-cr-0016-4-WSD-GGB**

**JEREMIAH CARROLL,**

                                    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Brill's Report and
Recommendation ("R&R") [123] denying Defendant Jeremiah Carroll's
("Carroll") Motion to Suppress Evidence and Statements [84] and on Carroll's
Objections to the Court's Report and Recommendation [128].  Also before the
Court is Magistrate Judge Brill's Report and Recommendation [126] denying
Carroll's Motion to Suppress Information Obtained from His Blackberry PDA
[106] and Carroll's Objections to the Court's Report and Recommendation on His
Motion to Suppress Evidence Seized from His Blackberry PDA [129].

## I.      BACKGROUND

Defendant Carroll is charged with various counts related to the possession of at least one hundred kilograms of marijuana.  Before the Court are two motions by Carroll to suppress evidence collected by the Government during its investigation. First, Carroll seeks to suppress evidence obtained during the search and seizure of a trailer at his residence.  Second, he seeks to suppress the results of a search of his Blackberry Personal Digital Assistant ("Blackberry").  This search was conducted when Carroll voluntarily surrendered to law enforcement officials.

On February 20, 2007, as part of an ongoing investigation into marijuana smuggling, federal law enforcement agents obtained a warrant to arrest Carroll.  In the early morning hours of February 26, 2007, Austin Police Detective Paul Brick ("Brick") went to a house located at 2601 Neimann Way, in Austin, Texas, which was believed to be Carroll's residence.  Brick had been advised by Drug Enforcement Agency ("DEA") agents that a warrant to arrest Carroll on charges of conspiracy to distribute marijuana had been issued.  Brick was advised that the conspiracy might involve smuggling marijuana in large trailers.

When Brick arrived at the home, he first conducted a passive surveillance of the front of the home.  A black Ford F-350 truck was parked on the street outside

of the front of the residence.  A large Carson trailer (the "trailer") was attached to the truck.

Other Austin Police officers later joined Brick as he was conducting surveillance.  Among those who arrived was Detective Garrie Moore ("Moore"), a K-9 handler for the narcotics unit.  Moore brought his drug-detecting dog, Azteck.  Brick and the other officers continued to conduct surveillance of the outside of the residence for at least an hour.[1]  Moore at some point walked Azteck around the exterior of the trailer (the dog "sniff").  Moore testified that Azteck showed a behavior change[2] suggesting he had detected the scent of illegal narcotics near the middle of one side of the trailer.  Azteck crawled under the trailer, moved to the

_____

[1]  The record shows a dispute over when Detective Moore and Azteck examined the trailer.  Detective Brick testified that Detective Moore arrived and waited for an hour.  The R&R adopted Brick's version of events.  Detective Moore testified that he was called specifically to perform a K-9 search, which he did upon arriving.  Which version of events is accurate is not material to address the pretext issue raised by Carroll.

[2]  Moore specifically testified that Azteck performed a "head kick," or a sudden, unusual head movement.

door on the other side of the trailer, and sat down, giving a positive alert for illegal substances.[3]  Azteck was off his leash when he was altered.

Brick and the other officers continued their surveillance for two more hours. Eventually, Brick approached the residence and knocked on the front door.  Rachel Lyon ("Lyon") answered.  Brick told her that the trailer was parked illegally in front of a fire hydrant and asked her to move it.  Lyons agreed and went back into the residence to get her keys.  When Lyons stepped out of the house, Brick informed her that the officers' purpose at the residence was to arrest Carroll on a federal warrant.  Lyons permitted the officers to search the house for Carroll. Carroll was not found in the residence.

The officers then searched the trailer in the street, another trailer parked in the driveway, and the F-350 truck.  No contraband was found during the search.[4] The officers found what they characterize as a "hidden compartment" in the roof of the trailer.  The compartment did not contain any contraband.  The Government

---

[3]  Narcotics dogs adopt specific mannerisms to alert their handlers to the presence of narcotics.  Azteck's alert consists of going to the source of the narcotics odor and sitting.

[4]  The Government does not seek to introduce any evidence from the search of the trailer parked in the driveway or from the F-350 truck.  Only the search and seizure of the trailer in the street is at issue.

seeks to introduce photographs of and testimony about the existence of this compartment at trial.  Carroll moves to suppress this evidence.

On March 9, 2007, Carroll, accompanied by counsel, voluntarily surrendered to law enforcement officers at their offices.  Carroll was carrying a backpack when he surrendered.  Law enforcement officers searched the backpack in the presence of Carroll's lawyer, and discovered the Blackberry.[5]

The Blackberry's functions include a cellular telephone, which has both temporary and permanent memory.  The temporary memory contains, for example, a "recent calls" list.  The permanent memory contains more static, stable data, such as a programmable "contact" list of names, addresses, and phone numbers.  The "recent calls" list is dynamic and changes every time the Blackberry receives a call.  The "contacts" list changes only when changes are inputted.

Law officers searched and recorded the contents of the Blackberry's "contacts" list.  The Government seeks to introduce some of the contents of the "contacts" list at trial.  Carroll seeks to suppress this evidence.

On October 31, 2007, Magistrate Judge Brill issued an R&R denying Carroll's motion to suppress evidence from the search and seizure of the trailer.

---

[5]  The Government does not contend that the officers had consent to search the backpack or the Blackberry.

The R&R held specifically that the search of the trailer was not pretextual, and that Brick and Moore had probable cause to search the trailer based on Azteck's alert and the mobile vehicle exception to the warrant requirement.  The R&R found that Azteck was a sufficiently reliable drug detection dog for his alert to constitute probable cause to search.[6]

On November 5, 2007, Magistrate Judge Brill issued an R&R denying Carroll's motion to suppress the contents of the Blackberry.  The R&R reasoned that the search of the Blackberry was a proper search incident to arrest.

Carroll properly objected to both R&Rs.  For the reasons set forth below, the Court adopts the R&R denying the motion to suppress the fruits of the search of the trailer.  The Court requires a further hearing on Carroll's Objections regarding the search of the Blackberry.

## II.     STANDARD OF REVIEW

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v.

---

[6] The R&R did not discuss the propriety or legal significance of law enforcement officers seizing the trailer after no contraband was found.

Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or specify proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990).  With respect to those findings and recommendations to which the Defendant has not asserted objections, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

In this case, Carroll has articulated specific objections to the Magistrate Judge's conclusions that the search of the trailer was not pretextual, that the search was proper, and that Azteck's alert constitutes probable cause.  Carroll also specifically objects to the R&R's failure to discuss the seizure of the trailer, to the R&R's recognition of the arrest warrant as a relevant fact in the record, and to several of the R&R's findings of fact about the sequence of events at the time the

trailer was searched.[7]  Carroll also objects to the R&R's findings of law regarding the search of the Blackberry.  The Court considers the objections *de novo*.

## III.   DISCUSSION

### A.   Motion to Suppress Search and Seizure of Trailer

#### 1.   Probable Cause

The R&R held that the warrantless search of the trailer was reasonable because Azteck's positive alert provided probable cause to suspect the presence of contraband, and the fact that the trailer was mobile created an exigent circumstance justifying conducting the search without a warrant.  For the reasons set forth below, the Court agrees.

##### a.   *Justification to use Drug Dog*

Individuals do not have any expectation of privacy in odors emanating from their cars.  Hearn v. Board of Pub. Educ., 191 F.3d 1329, 1332 (11th Cir. 1999). "A dog sniff of a person's property located in a public place is not a search within the meaning of the Fourth Amendment."  Id.  A dog sniff of the exterior of a car,

---

[7]  The Court has set forth its findings of fact in the "Background" section above.  The Court finds that Carroll's rendition of facts limitedly conflicts with those found by the R&R and this conflict concerns only the length of time that Moore was present at the residence prior to running Azteck around the trailer.  This dispute of fact is not material to the Court's review of the Objections.

therefore, is not a "search" for constitutional purposes.  Merrett v. Moore, 58 F.3d 1547, 1553 n.11 (11th Cir. 1995).

The trailer was parked along the curb on a public street.  Moore could, accordingly, direct Azteck to sniff the publicly available exterior of the trailer for any reason, or no reason at all, without violating Carroll's Fourth Amendment rights.

### b.    Azteck

The law is well-settled that probable cause to search exists "when a drug-trained canine alerts to drugs."  United States v. Tamari, 454 F.3d 1259, 1265 (11th Cir. 2006) (citation and quotation omitted).  Carroll argues that Azteck's positive alert on the trailer did not provide probable cause because Azteck does not "alert" to the presence of narcotics with sufficient specificity.  Carroll also argues that Azteck has a history of unreliability that made it unreasonable for Moore to rely on his alert as establishing the presence of narcotics.

### i.    Azteck's Alert

Carroll first argues that Azteck does not give a sufficiently identifiable "alert" for his sniff to establish probable cause.  "A handler must be able to properly interpret a canine's subtle signals."  United States v. Outlaw, 134 F.Supp.

-9-

2d 807, 813 (W.D. Tex. 2001).  False alerts impugn a dog's reliability, and "can result from the handler's conscious or unconscious signals . . . ."  "[L]ess than scrupulously neutral procedures, which create at least the possibility of unconscious 'cuing,' may well jeopardize the reliability of dog sniffs."  United States v. Trayer, 898 F.2d 805, 809 (D.C. Cir. 1990).  A dog alert "is not always an objectively verifiable event.  In some instances, an alert is simply an interpretation of a change in the dog's behavior by a human handler."  Outlaw, 134 F.Supp. 2d at 813.

Carroll has not presented any evidence suggesting that Moore provided conscious or unconscious "cuing" that might lead Azteck to alert falsely; nor has he shown that Moore was unable to interpret properly Azteck's alerts.  Azteck "alerts" by sitting, and did so in this case.  Sitting is a discrete, identifiable behavior, difficult to mistake or misinterpret.  Azteck indicates that he is "in odor," that is, likely to alert, by manifesting changes of behavior.

In this case, Azteck engaged in a notable change of behavior that Moore calls a "head kick" near one side of the trailer.  Azteck then showed increased interest in the trailer, then sat down near a door, indicating a final alert.  Taken as a

whole, Azteck's course of conduct was clearly identifiable as an "alert" indicating the presence of narcotics.

ii.    *Azteck's Record*

Carroll also contends that Azteck's record shows that he is an unreliable dog such that his "alert" should not be considered to establish probable cause. The government argues, and the R&R appears to accept, that Azteck finds drugs with a "success" rate of 87%-97%. Carroll argues that the government has mischaracterized what should be construed as a "success" by Azteck, and that Azteck's record, if reviewed closely, shows a true accuracy rate of only 52%.

For a canine alert to provide probable cause, the canine must be trained to detect narcotics, and must do so reliably. United States v. Kennedy, 131 F.3d 1371, 1377-78 (10th Cir. 1997). A dog's past record can be relevant to determining whether the dog is sufficiently reliable for its alert alone to constitute probable cause. United States v. Klein, 626 F.2d 22, 27 (7th Cir. 1980).

It is undisputed that Azteck was trained and certified to detect marijuana, methamphetamine, heroin, and cocaine by the National Narcotic Detector Dog Association.[8] The Court does not need to resolve the parties' disagreement over

---

[8] This organization is private, but well-recognized. It is undisputed that there are no "official" or government-issued training certifications for police dog

-11-

the reliability or accuracy shown by Azteck's record.  Accepting, *arguendo*,

Carroll's contentions, Azteck is still sufficiently reliable for his positive alert to

constitute probable cause.

Probable cause is "a fair probability that contraband or evidence of a crime

will be found."  United States v. Dunn, 345 F.3d 1285, 1289 (11th Cir. 2003)

(quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  "The government's burden

of proving probable cause is less than a preponderance of the evidence."  Nnadi v.

Richter, 976 F.2d 682, 687 (11th Cir. 1992).

Even if Azteck's accuracy rate is only 52%, that level of reliability is

sufficient for his alert to establish probable cause.  Azteck's alert indicates the

presence of drugs by more than a preponderance of the evidence.  Azteck's

accuracy exceeds "fair probability" requirement of probable cause.

c.    *Mobile Vehicle Exception*

Although the Fourth Amendment generally requires searches to be

conducted pursuant to warrant, warrantless searches may be conducted pursuant to

certain enumerated exceptions.  The "automobile exception" states that if a vehicle

is readily mobile, and there is probable cause to believe it contains contraband, it

_____

narcotics detection.

-12-

may be searched without a warrant.  <u>Pennsylvania v. Labron</u>, 518 U.S. 938, 940

(1996).  "If probable cause justifies the search . . . it justifies the search of *every*

*part of the vehicle* and its contents that may conceal the object of the search."

 <u>Wyoming v. Houghton</u>, 526 U.S. 295, 301 (1999) (emphasis in original)

(quotation and citation omitted).  An automobile search extends "broadly to *all*

containers within a car, without qualification as to ownership."  <u>Id.</u> (emphasis in

original).  The Fourth Amendment does not require exigent circumstances beyond

the fact that a vehicle is functional and readily mobile.  <u>United States v. Watts</u>, 329

F.3d 1282, 1286 (11th Cir. 2003).

     The R&R found that the trailer was attached to the F-350 pickup truck, and

thus was a readily mobile vehicle.  The Court agrees with this conclusion.

Azteck's alert, as noted above, provided probable cause to suspect the presence of

contraband.  The automobile exception therefore applies, and the warrantless

search of the trailer was proper.

### 2.     Pretext

     Carroll contends that the only legitimate reason for officers to be at 2601

Neimann Drive was to execute the arrest warrant against Carroll.  Rather than

execute the warrant, officers engaged in prolonged surveillance, including running

a drug dog around the trailer parked in the street.  Only after prolonged

surveillance did officers knock at the door to inquire whether Carroll was home.

Carroll argues that the officers used the arrest warrant as a pretext for their true

intent, which was to conduct an warrantless search of the residence, the F-350

truck, and the trailers.

   An officer's subjective intent is not relevant to a Fourth Amendment

reasonableness analysis.  "[T]he scope of the Fourth Amendment is considered

objectively, and not by the subjective conclusions of the law enforcement officer."

United States v. Roy, 869 F.2d 1427, 1432 (11th Cir. 1989).  Even if the searching

officer himself doubts the existence of probable cause, "the court still [has] the

duty to objectively determine whether probable cause was present."  Id.

   Even assuming Carroll's speculation that the officers intended to conduct an

improper search rather than serve the arrest warrant, that fact does not undermine

the objective validity of the search.  As noted above, Azteck alerted on the mobile

trailer, parked in the public street.  Regardless of his motivations, Moore did not

violate Carroll's rights by directing Azteck to sniff the trailer.  Azteck's alert, by

itself, objectively provided probable cause for the officers to search the trailer.  The

"pretext" alleged by Carroll is, in this case, irrelevant.

-14-

Carroll also contends that the Magistrate Judge wrongly considered the criminal complaint, which Carroll argues was improperly admitted into the record in the R&R.  The presence or absence of the criminal complaint, and Brick and Moore's knowledge or ignorance of the facts contained in it, are not relevant to the Fourth Amendment analysis.  Once Azteck alerted to the presence of narcotics, probable cause existed to search the trailer.

### 3.     Seizure

Carroll last contends that even if the trailer was properly searched, it was improperly seized after the search because the officers did not find any contraband in the trailer.  Carroll argues that the photographs and testimony concerning the roof compartment should be suppressed because the trailer was improperly seized.

After carefully reviewing the facts in this case, the Court finds that the seizure of the trailer after the search has no legal relevance to whether the government can present evidence in the form of photographs and testimony regarding the hidden compartment.

Under the Fourth Amendment, seizures, like searches, must be "reasonable" and based on probable cause.  United States v. Gerber, 994 F.2d 1556, 1558 (11th Cir. 1993).  In cases where a seizure is unreasonable, a search conducted during or

because of that seizure is also unconstitutional.  See Illinois v. Caballes, 543 U.S. 405, 407-08 (2005).  Generally, if evidence is discovered as the result of an illegal action, such as an unconstitutional seizure, the Court must exclude any further evidence "come at by the exploitation of" the illegal behavior.  Wong Sun v. United States, 371 U.S. 471, 487-88 (1963).   There must, in other words, be some "causal connection" between the illegal act and the obtainment of the evidence sought to be suppressed.  Hudson v. Michigan, 126 S. Ct. 2159, 2164 (2006).

In this case, there is a causal connection between the seizure of the trailer after the search was conducted, and the evidence found during the search. Moreover, the photographs taken of the compartment in the trailer, and the observations that will be recounted in witness testimony, all occurred during the search, not after the seizure.  Thus, even if the seizure was improper – which the Court contends it was not – as set forth above, the search did not violate the Fourth Amendment.  The evidence that the government intends to introduce came from that search, and was not "come at by the exploitation of" the seizure, which occurred later in time.  Suppression of the evidence properly and constitutionally collected during the search is not warranted.

**B.**      <u>**The Blackberry Motion to Suppress**</u>

Carroll also objects to the Magistrate Judge's conclusion that the warrantless search of "contacts" list in his Blackberry was proper.  The Court requires further briefing from the parties before it can rule on Carroll's Objection and the Motion to Suppress.

### 1.    Search Incident to Arrest

The Government bears the burden of proving that a warrantless search[9] was

reasonable and did not violate the Fourth Amendment.  <u>United States v. Jeffers</u>,

342 U.S. 48, 51 (1951).  "Absent some grave emergency, the Fourth Amendment

--------

[9]  The parties have not briefed whether the search of the Blackberry constituted a "search" for Fourth Amendment purposes, because they apparently assume that it did.  This is not necessarily true.  "[T]he State's intrusion into a particular area . . . cannot result in a Fourth Amendment violation unless the area is one in which there is a 'constitutionally protected reasonable expectation of privacy.'" <u>New York v. Class</u>, 475 U.S. 106, 112 (1986) (citation omitted).  Even inherently personal things, like the contents of a conversation, are not protected by the Fourth Amendment if conducted in a way that defeats a reasonable expectation of privacy.  <u>Katz v. United States</u>, 389 U.S. 347, 351 (1967) (finding no reasonable expectation of privacy in a conversation held in public).  A person's status under the law is directly relevant to the analysis.  Parolees, for example, have a significantly diminished expectation of privacy, and may be subjected to searches that would be unconstitutional if directed against non-criminal citizens.  <u>Samson v. California</u>, 547 U.S. 843, 126 S.Ct 2193, 2199 (2006).  Prisoners have no reasonable expectation of privacy.  <u>Hudson v. Palmer</u>, 468 U.S. 517, 530 (1984).  Carroll voluntarily surrendered himself for arrest at law enforcement offices.  He elected to bring his backpack, which contained his Blackberry.  He elected not to delete the contents of the "contacts" list before his surrender.  The Court is not convinced that Carroll had a reasonable expectation of privacy in the contents of the Blackberry's memory when he surrendered himself for arrest. The parties have not briefed, and the Court will not here decide, whether one who voluntarily surrenders himself for arrest, with time in advance to contemplate his belongings and with the advice of counsel, has a reasonable expectation of privacy in those belongings.  The Court requests further briefing on whether Carroll had a reasonable expectation of privacy in the contents of his Blackberry.

has interposed a magistrate between the citizen and the police."  McDonald v.

United States, 335 U.S. 451, 455 (1948).

When a person is arrested, "it is reasonable for the arresting officer to search

the person arrested in order to remove any weapons that the latter might seek to use

in order to resist arrest of effect his escape."  Chimel v. California, 395 U.S. 752,

763 (1969).   The Supreme Court has also found it "entirely reasonable for the

arresting officer to search for and seize any evidence on the arrestee's person in

order to prevent its concealment or destruction."  Id.   Regardless, "[a] search or

seizure without a warrant as an incident to a lawful arrest has always been

considered a strictly limited right.  It grows out of the inherent necessities of the

situation at the time of the arrest.  But there must be something more in the way of

a necessity than merely a lawful arrest."  Id. at 759 (internal quotation marks

omitted).

As Carroll and the Government identify, this and other courts have reached

varying conclusions on whether searches of an arrestee's mobile phone is a lawful

search incident to arrest, and if so, how far that lawful search may extend.  Among

the questions courts have considered are whether a mobile phone fits within the

category of property intimately associated with an arrestee's person, United States

v. Park, No. CR 05-375 SI, 2007 WL 1521573, at *7-8 (N.D. Cal. May 23, 2007),
how contemporaneous the search must be relative to the arrest, United States v.
Mercado-Nava, 486 F. Supp. 2d 1271, 1277 (D. Kan. 2007), and whether the
search is limited to a phone's dynamic memory.  United States v. Zamora, No.
1:05-CR-250-WSD, 2006 WL 418390, at *4-5 (N.D. Ga. Feb. 21, 2006).  The
Court notes also that in this case, Carroll voluntarily surrendered himself for arrest
and voluntarily brought his backpack, containing the Blackberry, to law
enforcement offices at the time of his surrender.  Unlike the situations considered
in Zamora, Ortiz, and Park, Carroll had the opportunity to make a conscious choice
about which of his effects were available to law enforcement at the time of his
arrest.  Neither Carroll nor the Government has developed this issue factually, nor
has the issue been briefed.  The Court will defer ruling on the motion to suppress
the information resident in the Blackberry until an evidentiary hearing is conducted
and the parties further brief this issue.

## IV.    CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the Court **ADOPTS AS ITS ORDER** the

Magistrate Judge's Report and Recommendation [123].  Carroll's Objections to

that R&R [128] are **OVERRULED**.  Carroll's Motion to Suppress Evidence and

Statements [84] is **DENIED**.

      **IT IS FURTHER ORDERED** that the Court defers its ruling on Carroll's

Objections to the Court's Report and Recommendation on His Motion to Suppress

Evidence Seized from His Blackberry PDA [129].  An evidentiary hearing on

Carroll's Motion to Suppress [106] shall be conducted on Friday, March 7, 2008,

at 10:00 a.m. in Courtroom 1705.  The hearing should include evidence to address

the following questions:

1. Where did the arrest occur and was Carroll subjected to security screening before he surrendered?  If so, what was the nature and extent of the screening?  Was the Blackberry subject to it?

2. Where was the seized contact information stored in the Blackberry?  How could changes be made to such contact information?  By whom could changes be made?

3. How was the contact information accessed by law enforcement?  Were there any access procedures or devices on the Blackberry to protect against entry into stored data on the Blackberry?  If so, were these bypassed by law enforcement to access the contact information seized?

4. What were the circumstances of Carroll's arrest?  How and when was the backpack containing the

Blackberry seized?  How and when was the
Blackberry searched?

5.      How long was Carroll detained after arrest, and
        was the Blackberry returned to him?  If so, when
        was the Blackberry returned?

**SO ORDERED** this 1st day of February 2008.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE